IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL HOOPER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RONNIE TOUNGETTE, individually, )<br>and in his official capacity as )<br>HUMPHREYS COUNTY SHERIFF, )<br>)<br>Defendant. ) | Case No. 3:04-0358<br>Judge Trauger<br>Magistrate Judge Griffin<br>JURY DEMAND |

## MEMORANDUM

Presently pending before the court is a Motion for Summary Judgment (Docket No. 16) filed by defendant Ronnie Toungette, individually, and in his official capacity as Humphreys County Sheriff, to which plaintiff Michael Hooper has responded (Docket No. 27).

### Factual Background and Procedural History[1]

Defendant Ronnie Toungette has served as the Sheriff of Humphreys County, Tennessee, for twenty-four years. (Docket No. 21, Toungette Dep. at 4, 7). Sheriff Toungette hired Michael Hooper as a dispatcher/jailer in 1993. (Id. at 12). Upon hiring him, Sheriff Toungette gave Hooper a copy of the employee handbook governing sheriff's department employees and instructed him to familiarize himself with the policies and procedures outlined therein. (Id. at 13-14). The handbook provides as follows:

---

[1] Unless otherwise noted, the facts are drawn from plaintiff's Amended Complaint (Docket No. 13), defendant's Answer (Docket No. 7), and "Plaintiff's Response to Defendants' Statement of Undisputed Material Facts in Support of Summary Judgment". (Docket No. 28) .

1

**EMPLOYMENT-AT-WILL**
No policy, benefit, or procedure contained herein creates an employment contract for any period of time. All employees will be considered employees-at-will. Employees may be terminated for failure to satisfactorily perform their duties or simply at the will of the employer, but they shall not be terminated for a discriminatory or illegal purpose.

(Employee Handbook, Ex. A to Docket No. 21). The handbook further provides: "This manual **DOES NOT** create any contractual rights to employment in favor of any employee." (Id.)(emphasis in original).

In 1996, Hooper became a deputy sheriff. (Docket No. 21, Toungette Dep. at 12-13). Soon afterwards, Hooper became Sheriff Toungette's only investigator. (Id. at 15-16).

In October of 2001, Sheriff Toungette learned that $1,600.00 was missing from a locked cabinet in his office. (Id. at 18, 22). The sheriff's department was holding this money as evidence of two crimes, a burglary and an armed robbery. (Id. at 9, 24). After discovering that the money was missing, Sheriff Toungette posted a notice to all employees of the sheriff's department informing them that the money was missing and that whoever took the money had until October 24, 2001, to return it. (Notice, Ex. 2 to Docket No. 21, Toungette Dep.). The notice further stated that the Tennessee Bureau of Investigation ("TBI") would be called in to investigate if no one came forward. (Id.).

The money was not returned, and Sheriff Toungette brought the matter to the attention of the assistant district attorney. The district attorney's office contacted the TBI, which conducted an investigation. Sheriff Toungette was not involved in the investigation.

As part of its investigation, the TBI interviewed all employees of the sheriff's department. (Docket No. 21, Toungette Dep. at 31). Four employees were selected at random and administered

2

polygraph tests. (Id. at 33, 35). Hooper was one of those four employees. (Id. at 36). The TBI wanted to administer a second polygraph test to Hooper because of "some problems" with the first test that cast suspicion on him. (Id. at 39). Hooper refused to take a second test. (Id.)

An agent from the TBI went before the grand jury regarding the investigation of the missing money on October 7, 2002. (Id. at 40). Sheriff Toungette did not testify before the grand jury and did not know whether anyone else did. Hooper was indicted by the grand jury for theft.

Sheriff Toungette suspended Hooper without pay pending the outcome of the theft charges. He allowed Hooper to use his accrued vacation and sick leave during his suspension which enabled Hooper to draw his pay until December 11, 2002.

While the criminal charges against Hooper were pending, Sheriff Toungette received a report from the Williamson County Sheriff's Department that Hooper "had conducted himself in a disorderly manner" at the Williamson County Courthouse and had almost been arrested. (Docket No. 21, Toungette Dep. at 48-49; Termination Letter, Ex. 4 to Docket No. 21). During the incident, Hooper had shown his badge to Williamson County police officers but had not informed them that he was on administrative suspension. (Docket No. 21, Toungette Dep. at 48; Docket No. 20, Hooper Dep. at 8-9).

Also while the criminal charges against Hooper were pending, Sheriff Toungette learned that Hooper had refused to accept service of legal papers, which had prevented an officer from performing his other duties for several hours. (Docket No. 21, Toungette Dep. at 52-58). Hooper maintains that he asked the officer to delay serving the papers on him until after he returned from vacation and that the officer had agreed to do so. (Docket No. 20, Hooper Dep. at 14-16).

3

As a result of these incidents, Sheriff Toungette decided to terminate Hooper's employment for "conduct unbecoming of an officer." (Docket No. 21, Toungette Dep. at 53; Termination Letter, Ex. 4 to Docket No. 21). According to Sheriff Toungette, on June 26, 2003, he sent a letter to Hooper informing him that he had been terminated. (Docket No. 21, Toungette Dep. at 53-54; Termination Letter, Ex. 4 to Docket No. 21). He did not advise Hooper in the letter or by other means that he had the right to appeal his termination or the right to a hearing in connection with his termination (Docket No. 21, Toungette Dep. at 54) because he was unaware that Hooper had those rights. (Id. at 62-63).

Hooper maintains that he never received this letter (Docket No. 20, Hooper Dep. at 14) and that the first time he learned of his termination was on March 9, 2004, when his attorney received written notification of Hooper's termination by the county attorney.

In February of 2004, Hooper stood trial on the criminal charges that resulted in his suspension. Those charges were dismissed for lack of evidence. On the advice of his attorney, Hooper waited for Sheriff Toungette to contact him regarding the lifting of his suspension. (Id. at 34). On March 3, 2004, through his attorney, Hooper demanded back pay and reinstatement from Sheriff Toungette. (Ex. C to Docket No. 22, Toungette Decl.). He did not request a name clearing hearing related to his suspension or termination because he did not know that he was entitled to a hearing.

Hooper initiated this action on April 26, 2004, alleging the following claims against Sheriff Toungette in his individual and official capacities: (1) denial of Hooper's statutory rights to a hearing under Title 38 of the Tennessee Code; (2) denial of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983; and

4

(3) malicious prosecution in violation of Tennessee common law. (Docket No. 1). Hooper filed an Amended Complaint on July 27, 2004. (Docket No. 13). Defendant Toungette, individually, and in his official capacity as Humphreys County Sheriff, has answered the Complaint. (Docket No. 7). This case is currently before the court on defendant's Motion for Summary Judgment. (Docket No. 16).

The court has federal question jurisdiction over plaintiff's Section 1983 claims, see 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims, see 28 U.S.C. § 1367(a).

### Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the court must view the factual evidence and draw reasonable inferences in the light most favorable to the nonmoving party. See Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); McLean v. Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" Little Caesar Enters., Inc. v. OPPCO, LLC, 219 F.3d 547, 551 (6th Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). If the nonmoving party, however, fails to make a sufficient showing on an

5

essential element of the case with respect to which the nonmoving party has the burden, the moving party is entitled to summary judgment as a matter of law. See Williams v. Ford Motor Co., 187 F.3d 533, 537–38 (6th Cir. 1999).

To preclude summary judgment, the nonmoving party "is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." Gaines v. Runyon, 107 F.3d 1171, 1174–75 (6th Cir. 1997). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Shah v. Racetrac Petroleum Co., 338 F.3d 557, 566 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. To determine whether the nonmoving party has raised a genuine issue of material fact, the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his favor. Id. at 255.

The court should also consider whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Amway Distribs. Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 251–52). "There is no genuine issue for trial unless the nonmoving party has produced enough evidence for a jury to be able to return a verdict for that party." Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000). If the evidence offered by the nonmoving party is "merely colorable," or "is not significantly probative," or enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. Anderson, 477 U.S. at 249–52. "A genuine dispute between the parties on an issue of material fact

must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citations omitted).

## Analysis

I.   Plaintiff's 42 U.S.C. § 1983 Claims

Defendant moves for summary judgment of plaintiff's § 1983 claims against Sheriff Toungette in his official and individual capacities. Subsequent to the filing of defendant's Motion for Summary Judgment, plaintiff amended his Complaint. The Amended Complaint alleges no individual capacity claims against Sheriff Toungette. (Docket No. 13). Plaintiff confirms in his Response to Defendant's Motion for Summary Judgment that he has abandoned his claims against Sheriff Toungette in his individual capacity. (Docket No. 27 at 1)("Plaintiff also states that he informed defendant at defendant's deposition that he did not intend to pursue a claim against him individually. Therefore, the Court may dismiss the individual claim."). Accordingly, defendant's Motion for Summary Judgment as to plaintiff's claims against Sheriff Toungette in his individual capacity shall be denied as moot.

The only remaining § 1983 claims in this action are those claims against Sheriff Toungette in his official capacity.[2] A § 1983 action brought against an official of a governmental entity in his official capacity should be construed as one brought against the governmental entity that employs the individual. Johnson v. Karnes, 398 F.3d 868, 877 (6th Cir. 2005)(citing Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690 n.55 (1978)). Thus, plaintiff's remaining claims are actually claims against the governmental entity that employs Sheriff Toungette. See Johnson, 398

---

[2]Plaintiff alleges that Sheriff Toungette in his official capacity deprived plaintiff of his rights under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution by maliciously prosecuting him and by suspending and later terminating his employment without notice and an opportunity to be heard. (Docket No. 1).

7

F.3d at 877 (stating that suit against sheriff in his official capacity is permissible under § 1983 and is equivalent to suit against county on whose behalf he acts).

Plaintiff does not identify in his Complaint or Amended Complaint the entity that employs Sheriff Toungette. Defendant's Answer intimates that Sheriff Toungette is employed by Humphreys County. (Answer, Docket No. 7 at 3 ¶ 18)("Defendant avers and alleges that he is immune from suit in his official capacity to the extent the plaintiff seeks damages against the County government for intentional torts."). Likewise, the employee handbook provided to plaintiff Hooper by Sheriff Toungette is entitled "Personnel Policy Handbook for Employees of Humphreys County." (Employee Handbook, Ex. A to Docket No. 21, Dep. of Toungette)(emphasis added).

The preferred method of filing an action against a county is to name it in the complaint. Timberlake v. Benton, 786 F. Supp. 676, 684 (M.D. Tenn. 1992). If not named, the suit against the county may proceed only if the county, "being the real party in interest, has received notice and an opportunity to respond." Id. (citing Brandon v. Holt, 469 U.S. 464, 471-72 (1985)).

Arguably, Humphreys County has received notice and an opportunity to respond to plaintiff's claims against it. Plaintiff's original Complaint asserts claims against Sheriff Toungette "Individually and In His Official Capacity" (Docket No. 1) and his Amended Complaint asserts claims against Toungette "Sheriff of Humphreys County, Officially" (Docket No. 13). However, a separate summons was not issued in this case for Humphreys County. The only Return of Service in the record indicates that Toungette was personally served. (Docket No. 3). Counsel for defendant Toungette filed a Notice of Appearance and a Motion for Summary Judgment on behalf of a singular "Defendant," Ronnie Toungette. (Docket Nos. 4 and 16).[3] As such, it is unclear from the current

---

[3]The Motion for Summary Judgment is entitled "Defendants' Motion for Summary Judgment," but in the text of the Motion and in the Memorandum filed in support of the Motion, the

8

record whether Humphreys County has been afforded notice and an opportunity to respond to this suit as is required by Brandon, 469 U.S. at 471-72.

Even if Humphreys County has received notice of plaintiff's claims and has responded by virtue of the pleadings filed by defense counsel on behalf of Toungette in his official capacity, plaintiff's § 1983 claims against Humphreys County still fail. A municipality may only be held liable under § 1983 if (1) plaintiff's harm was caused by a constitutional violation; and (2) the municipality was responsible for that violation. Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Municipal liability under § 1983 will not attach on the basis of respondeat superior. City of Canton v. Harris, 489 U.S. 378, 385 (1989). "It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983." Id. (internal quotation marks and citations omitted). In other words, a municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. Monell v. New York City Dep't of Social Servs., 436 U.S. at 691.

Here, there are no facts in the record supporting the allegation of a Humphreys County policy or custom which caused a deprivation of plaintiff's constitutional rights. Because plaintiff has not shown that a genuine issue of material fact exists, defendant's motion for summary judgment as to plaintiff's § 1983 claims against Sheriff Toungette in his official capacity will be granted, and those claims shall be dismissed with prejudice.

In any event, plaintiff has failed to state claims against Humphreys County under § 1983 upon which relief can be granted. Even construing the allegations in the light most favorable to

---

singular term "Defendant" is used. (Docket Nos. 16 and 17).

plaintiff, neither the original Complaint nor the Amended Complaint allege the existence of any Humphreys County policy or custom which deprived plaintiff of a constitutionally protected right. See Perry v. Am. Tobacco Co., 324 F.3d 845, 848 (6th Cir. 2003); Performance Contracting, Inc. v. Seaboard Surety Co., 163 F.3d 366, 369 (6th Cir. 1998).

Moreover, even if plaintiff sought leave of court to amend his complaint to add policy or custom allegations at this late, the court would not allow it. Generally speaking, the Sixth Circuit is very liberal in allowing amendments to a complaint, see Janikowski v. Bendix Corp., 823 F.2d 945, 951 (6th Cir. 1987), which is consistent with the language of Rule 15(a) that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, the Sixth Circuit has also recognized that certain factors may warrant the denial of a motion to amend the pleading. These factors include undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party if the amendment is granted, and futility of the amendment. Bridgeport Music, Inc. v. Dimension Films, __ F.3d __, 2005 WL 1384376 (6th Cir. June 3, 2005). "Notice and substantial prejudice to the opposing party are critical factors in determining whether amendment should be granted." Id. (citing Head v. Jellico Hous. Auth., 870 F.2d 1117, 1123 (6th Cir. 1989). "When an amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." Wade v. Knoxville Utils. Bd., 259 F.3d 452, 459 (6th Cir. 2001)(citation omitted).

In this case, defendant would be unduly prejudiced if the court allowed plaintiff to amend his complaint at this late date. Plaintiff filed his original Complaint fifteen months ago. (Docket No. 1). Plaintiff has already amended his Complaint once. (Docket No. 13). Defendant has moved for summary judgment of plaintiff's claims. (Docket No. 16). The deadline for conducting

10

discovery was November 1, 2004. (Docket No. 10). The deadline for filing dispositive motions was February 28, 2005. (Id.) This matter is set for a jury trial to begin in a few weeks. (Docket No. 11). The court finds that these circumstances do not warrant the granting of leave to file a second amended complaint. See Wade, 259 F.3d at 459 (affirming denial of leave to amend complaint sought one and one-half years after filing of complaint because of "significant prejudice to the defendant"; noting that dispositive motion deadline had passed, defendant had filed motion for summary judgment, and significant discovery had been completed).

Although plaintiff has not filed a formal motion to this effect, plaintiff apparently desires to voluntarily dismiss his § 1983 claim based on defendant's alleged malicious prosecution of plaintiff. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Docket No. 27 at 6)("Plaintiff concedes the malicious prosecution issue to defendant."). Voluntary dismissals are governed by Federal Rule of Civil Procedure 41(a). Once an answer or a motion for summary judgment has been filed, a plaintiff must seek a voluntary dismissal under Rule 41(a)(2), which provides as follows:

> (2) By Order of Court. Except as provided in paragraph (1), . . . an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper . . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

Fed. R. Civ. P. 41(a)(2); United States v. One Tract of Real Prop., 95 F.3d 422, 425 (6th Cir. 1996)("Rule 41(a)(2) allows a plaintiff to voluntarily dismiss a claim with permission of the court if the request is made after the defendant has filed an answer.").

Whether dismissal should be granted under the authority of Rule 41(a)(2) is within the sound discretion of the district court. Grover v. Eli Lilly & Co., 33 F.3d 716, 718 (6th Cir. 1994). "The primary purpose of the rule in interposing the requirement of court approval is to protect the

11

nonmovant from unfair treatment." Id. (citation omitted). In determining whether a defendant would suffer plain legal prejudice, the court considers such factors as the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the case, the plaintiff's explanation of the need for dismissal, and whether a motion for summary judgment has been filed by the defendant. Id.

In the instant case, defendant filed his Answer to plaintiffs' Complaint before plaintiff sought to voluntarily dismiss his constitutional-based malicious prosecution claim under § 1983. (Docket Nos. 7 and 27). Thus, the court construes plaintiff's request to voluntarily dismiss the claim as a request under Rule 41(a)(2). The court finds that under the circumstances of this case, the factors weigh in favor of granting plaintiff's request. Although defendant has filed a motion for summary judgment, it does not appear that defendant has devoted a significant amount of time and resources in preparation for trial at this point in the litigation. There is no evidence of excessive delay or lack of diligence on the part of plaintiff Hooper in prosecuting this case. Plaintiff has conceded the claim is not viable. Accordingly, plaintiff's constitutional-based malicious prosecution claim against Sheriff Toungette shall be dismissed with prejudice, and defendant's Motion for Summary Judgment as to that claim shall be denied as moot.

## II. Plaintiff's State Claims

Defendant seeks summary judgment of plaintiff's malicious prosecution claim under Tennessee common law. Plaintiff now seeks to voluntarily dismiss this claim in addition to his constitutional-based malicious prosecution claim under § 1983. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Docket No. 27 at 6)("Plaintiff concedes the malicious prosecution issue to defendant."). For the same reasons discussed above, the court finds that it is appropriate to allow the plaintiff to

12

do so.  Accordingly, the claim shall be dismissed with prejudice, and defendant's Motion for Summary Judgment as to that claim shall be denied as moot.

Plaintiff also contends in his Amended Complaint that Sheriff Toungette, acting in his official capacity, denied Hooper's statutory rights to a hearing under Title 38 of the Tennessee Code. Having dismissed plaintiff's federal claims, the court must now decide whether to exercise supplemental jurisdiction over plaintiff's remaining state law claim.  District courts generally have broad discretion to decide whether to exercise supplemental jurisdiction over state law claims.  See Musson Theatrical, Inc. v. Fed. Express Corp., 89 F.3d 1244, 1254 (6th Cir. 1996) (citation omitted). Under 28 U.S.C. § 1367(c)(3), a federal district court may decline to exercise supplemental jurisdiction over a plaintiff's pendent state law claims if the court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  This section codifies the approach first taken by the Supreme Court in United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966), and refined by the Court in Rosado v. Wyman, 397 U.S. 397, 405 (1970), and mandates that "there is no categorical rule that the pretrial dismissal of a federal claim bars a court from deciding remaining state law claims" but that the decision depends on "'judicial economy, convenience, fairness, and comity.'"  Musson Theatrical, 89 F.3d at 1254 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).  The usual course for the district court, if all federal claims are disposed of on summary judgment, is to dismiss the state law claims without prejudice.  Brandenburg, 253 F.3d at 900 (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial . . . the state claims should be dismissed as well")); see also Musson Theatrical, 89 F.3d at 1254–55 ("when all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims").  Given that judicial economy

would not be served by retaining jurisdiction over the pendent state law claims, and plaintiff has not apprised the court of any particular interest that would be served by exercising supplemental jurisdiction, the court will decline to exercise supplemental jurisdiction over plaintiff's state law claim under Title 38 of the Tennessee Code. Accordingly, that claim will be dismissed without prejudice.

## Conclusion

For the reasons expressed herein, defendant's Motion for Summary Judgment (Docket No. 16) will be granted in part and denied in part.

In particular, defendant's Motion will be granted with respect to the following claims: (1) plaintiff's due process claims under 42 U.S.C. § 1983 against Sheriff Toungette in his official capacity; and (2) plaintiff's state law claim under Title 38 of the Tennessee Code against Sheriff Toungette in his official capacity. Those claims will be dismissed with prejudice.

Defendant's Motion will be denied as moot as to plaintiff's claims under 42 U.S.C. § 1983 against Sheriff Toungette in his individual capacity.

Although plaintiff has not filed a formal motion to this effect, plaintiff apparently desires to voluntarily dismiss his constitutional-based malicious prosecution claim under 42 U.S.C. § 1983 and his state law malicious prosecution claim against Sheriff Toungette in his official capacity. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Docket No. 27 at 6). The court construes plaintiff's request as a motion to voluntarily dismiss, which the court will grant. Accordingly, those claims will be dismissed with prejudice. Defendant's Motion with respect to these claims will be denied as moot.

The court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claim. Accordingly, plaintiff's state law claim under Title 38 of the Tennessee Code against Sheriff Toungette in his official capacity will be dismissed without prejudice.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge